UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| HUDSON EFT, LLC, *c/o Azimuth Development Group LLC*,<br><br>                                        Plaintiff,<br><br>              -v-<br><br>WESTCHESTER SURPLUS LINES INSURANCE COMPANY,<br><br>                                        Defendant. | 20 Civ. 8603 (PAE)<br><br><u>OPINION &<br>ORDER</u> |

---

PAUL A. ENGELMAYER, District Judge:

This case arises from an insurance claim filed after pipes burst at an apartment complex on a cold winter evening.  Plaintiff Hudson EFT, LLC ("Hudson") alleges that its insurer, defendant Westchester Surplus Lines Insurance Company ("Westchester"), breached the parties' insurance contract by failing to cover Hudson's losses caused by the burst pipes.

Hudson originally brought this action in New York State court.  Westchester timely removed it to this Court, based on diversity jurisdiction.  Hudson now seeks to add a new, non-diverse party, and therefore to remand the action to state court pursuant to 28 U.S.C. § 1447(e). The new party—The Wavecrest Management Team ("Wavecrest")—is the property manager whose negligence, Hudson claims, caused the pipes at issue to freeze and burst.  Westchester, however, argues that because Hudson's motive in seeking to join Wavecrest is, at least in part, to destroy diversity so as to deprive Westchester of its chosen federal forum, the Court should deny leave to join Wavecrest.

For the following reasons, the Court grants Hudson leave to join Wavecrest to this action and accordingly remands the case to New York State court.

I.       **Background**[1]

Hudson is a New York limited liability company.  Compl. ¶ 1.  Its members are residents

of New Jersey, Florida, and New York.  Dkt. 20 at 1–2.  It owns property located at 80 Main

Street, Ossining, New York, 10562.  Compl. ¶ 8.  As of January 6, 2020, that property was

covered by an insurance policy issued by Westchester, a Georgia corporation with its principal

place of business in Pennsylvania.  *Id.* ¶ 9; Dkt. 8 ("Notice of Removal") ¶ 7.

On January 6, 2020, the property was damaged after a frozen pipe on the premises burst.

Compl. ¶ 19.  Hudson submitted an insurance claim to Westchester seeking indemnification for

the damage.  *Id.* ¶ 20.  Westchester, however, denied the claim on the basis that Hudson

negligently maintained heat in the property, allowing the pipes to freeze and burst.  *Id.* ¶¶ 22–26;

Westchester Ltr. at 1.

Wavecrest, a New York corporation with its principal place of business in Queens, New

York, was Hudson's property manager and was responsible for maintaining the insured property.

Dkt. 10 at 1.  Although Hudson had not filed legal action against Wavecrest until its attempt to

add Wavecrest to this lawsuit, Hudson maintains that Wavecrest negligently caused the pipes at

the property to freeze and burst, thereby breaching its contract with Hudson and making it liable

to Hudson for any losses Westchester does not cover.  *Id.*

On May 28, 2020, Hudson filed the initial state-court complaint against Westchester.  *See*

Compl.  In it, Hudson alleged that Westchester's failure to pay under the insurance policy was a

breach of contract.  *Id.* ¶¶ 22–26.  On September 21, 2020, four months later, Hudson's counsel,

---

[1] The Court draws its account of the underlying facts from the parties' respective submissions
including: the original complaint filed in state court, Dkt. 8-1 ("Compl."); Hudson's October 16,
2020 letter seeking remand, Dkt. 10; Westchester's letter in opposition to Hudson's request to
join Wavecrest and remand, Dkt. 17 ("Westchester Ltr."); Hudson's letter in response, Dkt. 18
("Hudson Ltr."); and the transcript of the teleconference held on October 21, 2020 ("Tr.").

Frank P. Winston, Esq., emailed Westchester's counsel, Katherine Lechleitner, Esq., asking her to accept service on Westchester's behalf.  Dkt. 17-2 at 2.  On October 1, 2020, Lechleitner agreed to do so.  *Id.* at 1.  Later that day, after a phone call on which Lechleitner raised the possibility of removal, *see* Tr. at 13–14, Winston emailed Lechleitner informing her that a "potential new Defendant is Wavecrest Management.  They advised they were sending a plumber to drain the lines but they did not," Dkt. 17-3 at 1.

Two weeks later, on October 15, 2020, at 12:43 p.m., Lechleitner wrote Winston, informing him that Westchester had decided to remove the case to federal court.  Dkt. 17-4 at 1.  About five minutes later, Westchester did so.  Dkt. 17-5 at 1.  At 1:24 p.m. the same day, Winston wrote Lechleitner to notify her that he "just amended to add Wavecrest," remarking that "[y]ou can't remove it there is no diversity and Wavecrest belongs in the case."  Dkt. 17-6; *see* Dkt. 17-7 (amended state-court complaint).  In her response to Winston, Lechleitner stated that Westchester had removed to federal court before Winston had filed his amended complaint adding Wavecrest.  Dkt. 17-8 at 2.  Soon thereafter, Winston attempted to file the amended complaint adding Wavecrest in the instant action, but it was automatically rejected because the Court had not granted him leave to file an amended complaint.  Dkt. 4.

On October 16, 2020, Hudson filed a letter seeking remand to state court in light of its intention to add non-diverse Wavecrest as a defendant or, in the alternative, seeking a conference to discuss this matter.  Dkt. 10.

On October 21, 2020, the Court held a teleconference and addressed the issue at length, but the parties continued to disagree about the propriety of Hudson's bid to add Wavecrest.  The Court directed counsel to submit letters setting forth their positions on Hudson's request for remand to New York State court, which the Court stated it would construe as a motion for leave to file an

amended complaint joining non-diverse Wavecrest, thereby necessitating remand.  Dkt. 14.  On

October 28, 2020, Westchester filed its letter.  Westchester Ltr.  On November 3, 2020, Hudson

responded.  Hudson Ltr.  On November 5, 2020, responding to a court order, Hudson submitted a

supplemental letter identifying its membership for diversity purposes.  Dkt. 20.

## II.    Discussion

"[I]f after removal the plaintiff seeks to join additional defendants whose joinder would

destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the

action to State court."  28 U.S.C. § 1447(e).  In deciding whether to permit such joinder, courts

in this District engage in a two-part analysis.  *See, e.g.*, *Durstenberg v. Electrolux Home Prods.,

Inc.*, No. 15 Civ. 9277 (CM), 2016 WL 750933, at *1 (S.D.N.Y. Feb. 23, 2016).  First, the

joinder must satisfy Federal Rule of Civil Procedure 20, which permits a joinder of multiple

defendants in one action "if (A) 'any right to relief is asserted against them jointly, severally, or

in the alternative with respect to or arising out of the same transaction, occurrence, or series of

transactions or occurrences' and (B) 'any question of law or fact common to all defendants will

arise in the action.'"  *Duino v. CEM W. Vill., Inc.*, No. 18 Civ. 10249 (CM), 2020 WL 3249214,

at *2 (S.D.N.Y. June 16, 2020) (quoting Fed. R. Civ. P. 20(a)(2)).

Second, diversity-destroying joinder is appropriate "only when consistent with principles

of fundamental fairness as appraised using the following factors: (1) any delay, as well as the

reason for delay, in seeking joinder; (2) resulting prejudice to defendant; (3) likelihood of

multiple litigation; and (4) plaintiff's motivation for the amendment."  *Id.*  The last of these

factors generally "is the most significant consideration in the fairness analysis."  *Grant v.

Johnson & Johnson*, No. 17 Civ. 3356 (GBD), 2017 WL 6812035, at *3 (S.D.N.Y. Dec. 19, 2017);

*see Briarpatch Ltd.*, L.P. v. Pate, 81 F. Supp. 2d 509, 515 (S.D.N.Y. 2000); *Nazario v. Deere & Co.*,

295 F. Supp. 2d 360, 364 (S.D.N.Y. 2003).  Even if the first three factors favor joinder and

remand, a plaintiff seeking "to add a non-diverse party *solely* to destroy the Court's basis for diversity jurisdiction" will not succeed. *Duino*, 2020 WL 3249214, at *4 (quoting *Durstenberg*, 2016 WL 750933, at *2). The decision whether to permit joinder of a party that would destroy diversity jurisdiction "is within the discretion of the trial court." *Lebetkin v. Giray*, No. 18 Civ. 8170 (DLC), 2018 WL 5312907, at *2 (S.D.N.Y. Oct. 26, 2018) (citation omitted).

Here, joinder is proper under Rule 20(a). Hudson's claim against Wavecrest arises out of the same occurrence as does its claim against Westchester: the January 6, 2020 bursting of pipes in the property owned by Hudson, managed by Wavecrest, and insured by Westchester. *See* Compl. ¶ 19; Hudson Ltr. at 1–2. And Hudson's claims against Wavecrest would share common issues of law and fact with its claims against Westchester. *See Duino*, 2020 WL 3249214, at *2. Westchester does not suggest otherwise. *See* Westchester Ltr. at 2 & n.4.[2]

The Court next considers the discretionary factors under § 1447(e). The first two clearly favor Hudson's bid to join Wavecrest. First, "[d]elay in seeking amendment is measured from the date of removal," not the filing of the original state action. *Nazario*, 295 F. Supp. 2d at 363; *see Grant*, 2017 WL 6812035, at *2; *Durstenberg*, 2016 WL 750933, at *2. Here, there is no delay: Hudson sought to amend and remand immediately upon Westchester's removal, and

---

[2] Elsewhere, Westchester glancingly alleges that the joinder of Wavecrest is "nominal and fraudulent" merely because Hudson "can commence a separate action against Wavecrest to obtain the same relief." *See* Westchester Ltr. at 3 n.5. Westchester's suggestion of fraudulent joinder is meritless. To show fraudulent joinder, "the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998); *see Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.*, 712 F. App'x 85, 86 (2d Cir. 2018) (summary order). A defendant seeking to make this showing "bears a heavy burden." *Pampillonia*, 138 F.3d at 461. Nothing in Westchester's letter approaches that standard.

indeed had earlier notified Westchester's counsel that Wavecrest was a potential new defendant.
*See* Dkts. 10, 17-3 at 1.  Second, Wavecrest's joinder would do little, if anything, to prejudice
Westchester.  This case is in its initial stages, and there has been no discovery.  Any prejudice to
Westchester would thus be minimal at most.  *See, e.g.*, *Grant*, 2017 WL 6812035, at *3;
*Durstenberg*, 2016 WL 750933, at *2; *Nazario*, 295 F. Supp. 2d at 364.  And the only prejudice
Westchester identifies—denial of its chosen forum—has been repeatedly rejected as non-
cognizable in this analysis.  *See, e.g.*, *Duino*, 2020 WL 3249214, at *3 (collecting cases).

      The third factor—the likelihood of multiple litigations—presents a closer question.
Hudson contends that, if it is unable to join Wavecrest here, multiple actions are likely because
Hudson has "always intended to bring Wavecrest into this action, if it was not resolved by the
time the statute of limitation is set to expire against Wavecrest."  Hudson Ltr. at 2.  And were
this action to remain in federal court with only Westchester as a defendant, to preserve its claims
against the allegedly negligent Wavecrest, Hudson might be forced to bring a separate action
against Wavecrest in New York State court.  *Id.*  If Wavecrest is added, however, Hudson would
be able to pursue its claims against each defendant in the same action, albeit one that would be
remanded to and proceed in state court.  *Id.*  Westchester counters that, if Wavecrest is added and
the case remanded, multiple proceedings may still follow because New York law would likely
result in the severance, at least for trial, of Hudson's claims against property manager Wavecrest
and insurer Westchester.  Westchester Ltr. at 3 (citing *Transamerica Ins. Co. v. Tolis Inn, Inc.*,
129 A.D.2d 512, 513 (1st Dep't 1987) (holding improper joinder of (1) contract claims by
insured against insurer with (2) negligence claims by third parties against insured, because
information about existence of insured's liability insurance might prejudice jury as to latter
claims)).

Hudson responds that *Transamerica* is distinguishable on the facts.[3]  Moreover, it argues,

any severance would be unnecessary until trial, as the only purpose served by severance would

be to prevent disclosure of insurance coverage from wrongly swaying a jury.[4]  That point has

force.  Joinder would thus achieve pretrial efficiencies—*e.g.*, deriving from a unitary discovery

plan—relative to litigating the two actions separately, one in federal and one in state court.  *See,*

*e.g.*, *Nazario*, 295 F. Supp. 2d at 364 (finding this factor to slightly favor remand even where it

was "not self-evident that . . . denying remand would heedlessly undermine judicial economy

and efficiency").  The Court finds this third factor to weigh in favor of remand, albeit modestly.

The fourth and final factor—plaintiff's motivation for joinder—"is the most significant

consideration in the fairness analysis."  *Grant*, 2017 WL 6812035, at *3.  Although pursuing the

joinder of a non-diverse party so as to consolidate claims in one action is a permissible motive,

"[a] principal desire to destroy federal diversity jurisdiction is an impermissible motive."  *Id.*

(quoting *Nazario*, 295 F. Supp. 2d at 364).  Even so, where the other three factors favor joinder

and remand, this fourth factor permits the denial of joinder and remand only where the plaintiff

seeks to add a non-diverse party "*solely* to destroy the court's basis for diversity jurisdiction."

*Leifer v. JPMorgan Chase Bank, N.A.*, No. 18 Civ. 7477 (PGG), 2020 WL 1130727, at *5

(S.D.N.Y. Mar. 9, 2020) ("[U]nless a plaintiff seeks to add a non-diverse party *solely* to destroy

---

[3] There, the negligence claims at issue were brought by third parties against the insured; here, the insured (Hudson) contemplates claims against a third party.  *See Transamerica*, 129 A.D.2d at 513.

[4] *See, e.g.*, *Glob. Imps. Outlet, Inc. v. Signature Grp., LLC*, 85 A.D.3d 662, 662 (1st Dep't 2011) (assessing severance only in reference to "joint trial"); *Smith v. McClier Corp.*, 38 A.D.3d 322, 323 (1st Dep't 2007) (requiring severance after summary judgment stage); *Currie v. Wilhouski*, No. 20725/09, 2011 WL 9191673, at *3 (N.Y. Sup. Ct. Jan. 27, 2011) (same), *aff'd*, 93 A.D.3d 816 (1st Dep't 2012); *see also* Tr. at 12–13 (counsel for Westchester, acknowledging that state court could sever for trial only); Tr. at 26 (counsel for Hudson, predicting that state court would not sever cases arising from common nucleus of fact until after discovery).

the court's basis for diversity jurisdiction, the court is required if the other factors are met to remand the action to state court." (quoting *Balfour v. Quest Diagnostics Inc.*, No. 11 Civ. 4701 (JSR), 2012 WL 335666, at *2 (S.D.N.Y. Feb. 1, 2012))); *see Duino*, 2020 WL 3249214, at *4 (same); *Durstenberg*, 2016 WL 750933, at *2 (same).  In contrast, where a plaintiff's desire to defeat diversity and return to the plaintiff's chosen forum is but one "motivating factor" among others, this last factor cannot outweigh all three others.  *See, e.g.*, *Durstenberg*, 2016 WL 750933, at *2.

Here, there is little doubt that the proposed joinder is largely motivated by Hudson's desire to defeat the Court's diversity jurisdiction.  Hudson concedes "that in seeking to amend he was partially motivated by a desire to be in state court."  Hudson Ltr. at 3.  And in the October 21, 2020 telephone conference with the Court, Hudson's counsel acknowledged that he first raised the possibility of adding Wavecrest immediately after Westchester's counsel informed him of Westchester's intent to remove.  *See* Tr. at 13–14.  He also explained the basis of his preference for state court:  Expert discovery is much more likely available in federal court, and Hudson would prefer to litigate without incurring that expense item.  *Id.* at 14–15.  The timing of Hudson's attempt to join Wavecrest is consistent with this motive.  After filing this action against Westchester in May 2020, Hudson waited nearly five months, until minutes after Westchester's removal, to attempt to add Wavecrest.  *See* Compl. (dated May 28, 2020); Dkt. 17-2 (Westchester accepts service on October 1, 2020); Dkt. 17-4 (Westchester notifies Hudson of removal at 12:43 p.m. on October 15, 2020); Dkt. 17-6 (Hudson tells Westchester at 1:24 p.m. on the same day that it "just amended to add Wavecrest . . . .  You can't remove it there is no diversity and Wavecrest belongs in the case.").

However, the evidence shows that defeating diversity is not Hudson's *sole* motive in joining Wavecrest.  As reflected in its counsel's October 1 email, Hudson has consistently contended that it has intended to litigate against Hudson *eventually*—although it hoped to use the instant action to persuade Westchester to settle (to obviate such a claim) or to join Hudson in seeking recovery against Wavecrest.  *See* Dkt. 17-3 at 1; Tr. at 14 (Hudson's counsel told Westchester's counsel on October 1 phone call that he initially "wanted to go after the insurance company first and then go after the tortfeasor").  And at the October 21 conference, Hudson's counsel, when asked if "the reason you sought to join the person [was] solely to defeat diversity," said no.  Tr. at 15.  Rather, Hudson's counsel stated, "at the end of the day, discovery is going to necessarily have to include Wavecrest" and that "Wavecrest would necessarily have to be sued" if the claim against Westchester was not resolved by the time the statute of limitations had run on Hudson's claims against Wavecrest.  *Id.* at 16–17.  Asked why Hudson had not sued Wavecrest at the outset, Hudson's counsel explained that its objective had been to persuade Westchester to "join [him] and go after Wavecrest," but that if that did not transpire, Hudson always intended to sue Wavecrest.  *Id.* at 17.  In its letter brief, Hudson makes the same argument, in somewhat greater detail.  Hudson Ltr. at 3.

Importantly, there is logic to Hudson's explanation.  As a matter of litigation strategy, it is coherent that a plaintiff claiming damage from burst frozen pipes would first seek relief from its insurer, and, if less than entirely successful, pursue claims against the property manager on whose watch the pipes were allowed to freeze.  The Court therefore credits Hudson's counsel's representation that Hudson has good-faith reasons for adding Wavecrest besides defeating the Court's diversity jurisdiction.  Accordingly, the Court cannot find that Hudson's sole motive in

adding Wavecrest to this action is to defeat diversity, and must remand the case to state court. *See Leifer*, 2020 WL 1130727, at *5.

The cases Westchester cites are not to the contrary.  In most, at least one (if not several) of the other three factors disfavored joinder and remand.  In *Lebetkin*, the Court found substantial delay, that defendants would be prejudiced, and that plaintiff had "opted for multiple litigation" by initially choosing to file separate actions in federal and state court.  2018 WL 5312907, at *2–3. In *Kregg*, a case from outside this District, the Court found delay and no likelihood of multiple litigation without remand.  *Kregg v. Am. Suzuki Motor Corp.*, No. 07 Civ. 501 (A) (M), 2008 WL 11357850, at *2–3 (W.D.N.Y. May 1, 2008).  And in *Nazario*, the Court found that plaintiff's unjustified five-month delay following removal in seeking to add a party supported denial of joinder and remand.  295 F. Supp. 2d at 363–64.

In *Grant*, the only case Westchester cites in which a motion to join and remand was denied where all three other considerations favored joinder, the basis for adding the proposed non-diverse defendant was tenuous.  *See* 2017 WL 6812035, at *3.  The Court relied on the fact that the plaintiff's amended complaint contained only "boilerplate allegations" against the new defendants, was "devoid of any specific allegations" as to them, and "improperly attribute[d] the production, design, and manufacturing of the Products to all Defendants, collectively."  *Id.*  The Court expressed concern that the new defendants lacked a substantial relationship to the case, and that the principles animating the fraudulent-joinder doctrine may have been relevant.  *Id.* Not so here.  Wavecrest undeniably is factually highly relevant to the dispute between Westchester and Hudson, and Hudson has sound reasons to pursue recovery from it.  *See* Dkt. 17-9 ¶¶ 45–69 (proposed amended complaint); *see also supra* note 2 (finding no fraudulent joinder). Accordingly, this last factor does not outweigh the others.

**CONCLUSION**

For the foregoing reasons, the Court grants Hudson's motion to join Wavecrest and

remand this matter to state court.  *See* Dkt. 10.  The Clerk of Court is respectfully directed to

close this case and to remand the matter to the Supreme Court of the State of New York, New

York County.[5]

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: November 16, 2020
       New York, New York

---

[5] *Duino v. CEM W. Vill., Inc.*, No. 18 Civ. 10249 (CM), 2020 WL 3249214, at *5 (S.D.N.Y.
June 16, 2020) ("For the foregoing reasons, Plaintiff's motion to remand this matter to state court
is granted. The Clerk of the Court is directed to remove Docket No. 48 from the Court's list of
pending motions and to close the file."); *Leifer v. JPMorgan Chase Bank, N.A.*, No. 18 CIV.
7477 (PGG), 2020 WL 1130727, at *6 (S.D.N.Y. Mar. 9, 2020) ("For the reasons stated above,
Plaintiff's motion for joinder and remand is granted. . . .  The Clerk of Court is instructed to
terminate the motions (Dkt. Nos. 28, 35), to close this case, and to return the matter to the Clerk
of Supreme Court of the State of New York, New York County." (citation omitted)).